**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-cr-20019-BLOOM**

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CARLOS DANIEL CANARIO-VILOMAR,
JESUS CALLE-BALBIN, and
JOSE ANTONIO CANARIO-VILOMAR,

    Defendants.

            /

## ORDER ON MOTION TO WITHDRAW PLEA AND DISMISS THE INDICTMENT

**THIS CAUSE** is before the Court upon Defendants Carlos Daniel Canario-Vilomar, Jesus

Calle-Balbin, and Jose Antonio Canario-Vilomar's (collectively, "Defendants") Joint Motion to

Withdraw Plea and Dismiss the Indictment, ECF No. [62] ("Motion"). Plaintiff United States of

America ("Government") filed a Response in Opposition, ECF No. [63] ("Response"), to which

Defendants filed a Reply, ECF No. [64] ("Reply"). The Court has considered the Motion, the

record, the applicable law, and is otherwise fully advised. For the reasons set forth below, the

Motion is denied.

## I.  BACKGROUND

According to the Criminal Complaint, on or about December 6, 2021, a Dutch DH-8

Maritime Patrol Aircraft ("MPA") located a go-fast vessel ("GFV") approximately 145 nautical

miles north of La Guajira, Colombia, in international waters and upon the high seas. *See* ECF No.

[1] ("Criminal Complaint"). The HNLMS HOLLAND, manned by United States Coast Guard

("USCG") Law Enforcement Detached Team ("LEDET") 109, investigated the GFV. Defendants

were aboard the vessel, and one of the Defendants, identified as the master of the vessel, claimed Dominican Republic nationality for the vessel. Upon being contacted by U.S. authorities, the Government of the Dominican Republic could neither confirm nor deny registry of the vessel. *See id.* Accordingly, the vessel was treated as a stateless vessel under 46 U.S.C. § 70502(d)(1)(C) of the Maritime Drug Law Enforcement Act ("MDLEA"). A full law enforcement boarding ensued, and law enforcement officials found nineteen (19) bales and three (3) individual packages of cocaine.

Defendants were then transported to the Southern District of Florida. In anticipation of Defendants' arrival in the Southern District of Florida, the Government filed a Criminal Complaint in this case on December 16, 2021, finding probable cause to charge Defendants with conspiracy to possess with intent to distribute five (5) kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 70506(b). *See* ECF No. [1]. Defendants appeared for their initial appearances before Magistrate Judge Edwin G. Torres on December 20, 2021. *See* ECF Nos. [4], [5], [6].

On January 20, 2022, a grand jury sitting in the Southern District of Florida returned a two-count Indictment against Defendants charging them with conspiracy to possess cocaine with intent to distribute onboard a vessel subject to the jurisdiction of the United States and possession with intent to distribute onboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70506(b), 70503(a)(1). *See* ECF No. [25] ("Indictment"). Defendants all entered guilty pleas in this case. *See* ECF Nos. [44], [48], [59].

Defendants now seek to withdraw their pleas and dismiss the Indictment asserting that there is fair and just reason to request the withdrawal of Defendants' guilty pleas. *See* ECF No. [62]. Defendants argue that the MDLEA's definition of a "stateless" vessel in § 70502(d)(1)(C) is

facially unconstitutional because it applies to vessels that are not "stateless" under customary international law and therefore exceeds Congress's authority under Article I, Section 8, Clause 10 ("Felonies Clause"). As such, Defendants argue that the Court lacks subject matter jurisdiction.[1]

The Government responds that Defendants' argument is unavailing because the MDLEA lawfully provides subject matter jurisdiction over Defendants and their crimes, and the MDLEA's definition of a "stateless" vessel is not unconstitutional. *See* ECF No. [63]. According to the Government, Eleventh Circuit precedent expressly upholds MDLEA prosecutions in cases where the vessel's claimed nation of registry could not corroborate the registry claims. *See id.*[2]

## II.   LEGAL STANDARD

### a.   Motion to Withdraw Guilty Plea

After the district court has accepted a defendant's guilty plea, and before sentencing, the defendant may withdraw a guilty plea only if (1) the district court rejects the plea agreement or (2) "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(A)-(B). This permissive withdrawal rule is to be liberally construed. *See United States v. Buckles*, 843 F.2d 469, 471 (11th Cir. 1988). It is well settled, however, that there is no absolute right to withdraw a guilty plea prior to imposition of a sentence. *See id.* The decision to allow withdrawal is left to the sound discretion of the trial court. *See United States v. Stitzer*, 785 F.2d

---

[1] All Defendants joined the Motion and the Reply, but Defendants make references to only "Mr. Canario-Villomar [*sic*]" or "Mr. Canario Villomar [*sic*]" in various sections. *See* ECF Nos. [62] at 2-3, [64] at 7. The Court presumes that all Defendants are requesting the same relief by joining the Motion and the Reply. *See* ECF Nos. [62] at 1, [64] at 1.

[2] The Government notes that the Eleventh Circuit has upheld "cases where vessels were deemed to be on the high seas because they were outside the territorial waters[] and cases where foreign crew members detained on the high seas took much longer to be presented to a United States court." ECF No. [63] at 1. However, the Government does not discuss those cases, and a discussion of those cases would be inapposite because Defendants' Motion does not raise arguments related to the high seas or delays in Defendants' presentment.

CASE NO. 22-cr-20019-BLOOM

1506, 1514 (11th Cir. 1986). Further, the defendant bears the burden of proof when requesting to withdraw a guilty plea. *See United States v. Izquierdo,* 448 F.3d 1269, 1278 (11th Cir. 2006).

### b.   Motion to Dismiss Indictment

A motion to dismiss an indictment is governed by Federal Rule of Criminal Procedure 12(b). A defendant may challenge an indictment on various grounds, including failure to state an offense, lack of jurisdiction, or constitutional reasons. *See United States v. Kaley*, 677 F.3d 1316, 1325 (11th Cir. 2012). "Under Fed. R. Crim. P. 12(b) an indictment may be dismissed where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have developed at trial." *United States v. Torkington,* 812 F.2d 1347, 1354 (11th Cir. 1987). Further, "[t]he sufficiency of a criminal indictment is determined from its face." *United States v. Critzer,* 951 F.2d 306, 307 (11th Cir. 1992). "The indictment is sufficient if it charges in the language of the statute." *Id.* "Constitutional requirements are fulfilled 'by an indictment that tracks the wording of the statute, as long as the language sets forth the essential elements of the crime.'" *Id.* at 308; *see also United States v. Cole*, 755 F.2d 748, 760 (11th Cir. 1985). The indictment's allegations are assumed to be true and are viewed in the light most favorable to the government. *See Torkington*, 812 F.2d at 1354.

### c.   MDLEA

The Felonies Clause of the U.S. Constitution grants Congress the power "[t]o define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations[.]" U.S. Const. art. 1, § 8, cl. 10. Pursuant to the Felonies Clause, Congress enacted the MDLEA, which makes drug trafficking on certain vessels on the high seas subject to the jurisdiction of the United States. 46 U.S.C. §§ 70501 *et seq.* The MDLEA applies to all cases where the alleged trafficking occurs on a "vessel subject to the jurisdiction of the United States[.]"

46 U.S.C. § 70503(e)(1). The term "'vessel subject to the jurisdiction of the United States'
includes— (A) a vessel without nationality." 46 U.S.C. § 70502(c)(1). The MDLEA further
defines a vessel without nationality to include "(C) a vessel aboard which the master or individual
in charge makes a claim of registry and for which the claimed nation of registry does not
affirmatively and unequivocally assert that the vessel is of its nationality." 46 U.S.C.
§ 70502(d)(1)(C).

### III.   DISCUSSION

#### a.   MDLEA's Definition of a Stateless Vessel

Defendants argue that the Court should allow the withdrawal of Defendants' guilty pleas
and dismiss the Indictment because 46 U.S.C. § 70502(d)(1)(C) of the MDLEA is facially
unconstitutional. *See* ECF No. [62] at 2-10. According to Defendants, Congress's authority under
the Felonies Clause to "define and punish . . . Felonies committed on the high Seas" is limited by
customary international law. *See id.* at 6. International law only allows jurisdiction over stateless
vessels. *See id.* at 7 (citing *United States v. Davila-Reyes*, 23 F.4th 153, 180 (1st Cir. 2022)). When
a master or individual in charge of a vessel makes a claim of nationality, international law
considers the vessel to have established a *prima facie* showing of nationality that does not render
the vessel stateless, even if the claimed nation of registry does not confirm or deny the nationality
of the vessel. *See id*. In contrast, § 70502(d)(1)(C) of the MDLEA confers jurisdiction over a vessel
if the master or individual in charge makes a claim of registry and the claimed nation of registry
does not affirmatively and unequivocally assert that the vessel is of its nationality. As such,
Defendants submit that § 70502(d)(1)(C) of the MDLEA is facially unconstitutional because it
extends beyond Congress's constitutional authority under the Felonies Clause.

Defendants further argue that the Eleventh Circuit has not addressed the issue and that the Court should consider the First Circuit's holding in *Davila-Reyes*. *See* ECF No. [62] at 8-10. According to Defendants, *United States v. Hernandez*, 864 F.3d 1292, 1303 (11th Cir. 2017), involved a statutory challenge pursuant to the MDLEA rather than a constitutional challenge of the MDLEA. *See id.* at 8-9. Defendants claim that the defendants in *Hernandez* argued unavailingly that the Government failed to establish jurisdiction pursuant to § 70502(d)(1)(C) because the vessel was not actually stateless. *See id.* at 8. The defendants in *Hernandez* did not challenge the constitutionality of § 70502(d)(1)(C). *See id.* at 9.

The Government responds that Defendants misinterpret binding Eleventh Circuit precedent, namely *Hernandez*, 864 F.3d at 1303, where Guatemala "had not 'affirmatively and unequivocally' asserted that [the vessel] was of Guatemalan nationality," and overlook *United States v. Campbell*, 743 F.3d 802, 809-810 (11th Cir. 2014), where Haiti "could neither confirm nor deny the registry" claim. ECF No. [63] at 5. According to the Government, the two cases presented the identical criminal offense and factual circumstances as the instant case, and the Eleventh Circuit held that the MDLEA conferred jurisdiction over the defendants. *See id.* at 11-13. Further, in *Hernandez*, the Eleventh Circuit specifically held that "the MDLEA was a constitutional exercise of Congressional authority under the Felonies Clause." *Id.* at 12 (quoting 864 F.3d at 1303). In *Campbell*, the Eleventh Circuit rejected the defendant's "argu[ment] that Congress lacked the power under the Felonies Clause to define his conduct as a criminal offense," thereby upholding the constitutionality of the MDLEA under the Felonies Clause. *Id.* (quoting 743 F.3d at 806). Given binding Eleventh Circuit precedent, the Government argues that Defendants' reliance on the First Circuit's decision in *Davila-Reyes* is misplaced. *See id.* 5.

CASE NO. 22-cr-20019-BLOOM

In addition, the Government submits that, as a necessary predicate for the First Circuit's holding that the MDLEA violated the Felonies Clause by not complying with international law, the First Circuit rejected the Government's argument that the "protective principle" of international law permits the MDLEA's conferral of jurisdiction over the defendants' vessel. *See id.* at 10 (citing *Davila-Reyes*, 23 F.4th at 161). The protective principle is "the right of a state to punish a limited class of offenses committed outside its territory by persons who are not its nationals – offenses directed against the security of the state or other offenses threatening the integrity of governmental functions that are generally recognized as crimes by developed legal systems." Restatement (Third) of Foreign Relations § 402, cmt. f (1987). The First Circuit did "not view the protective principle as supporting U.S. jurisdiction over drug-trafficking activity conducted on the high seas by foreign nationals on foreign vessels." *Davila-Reyes*, 23 F.4th at 161. In contrast, the Eleventh Circuit has repeatedly justified the MDLEA's assertion of jurisdiction over foreign nationals trafficking drugs on the high seas by expressly referencing the United States' rights under the protective principle. *See, e.g.*, *United States v. Tinoco*, 304 F.3d 1088, 1108 (11th Cir. 2002); *United States v. Persaud*, 605 F. App'x 791, 795 (11th Cir. 2015). As such, the Government avers that the First Circuit's holding relies on a predicate that is foreclosed by Eleventh Circuit precedent. *See* ECF No. [63] at 10-11.

Furthermore, the Government raises several arguments suggesting that *Davila-Reyes* was wrongly decided. First, the Government submits that the text of the Felonies Clause indicates that Congress's power to define and punish felonies committed on the high seas is not limited by international law. *See id.* at 8. Unlike Congress's power to criminalize piracy or offenses against the law of nations, which stems from universal jurisdiction over crimes recognized by international law, Congress's power to criminalize felonies committed on the high seas does not depend on

universal jurisdiction. *See id.* Instead, the Constitution allows Congress to prohibit conduct on the high seas – conduct other than piracy and offenses against the law of nations – irrespective of universal jurisdiction. *See id.* The Government argues that the Framers chose not to include language to limit Congress's power to define and punish felonies committed on the high seas to the bounds of international law, and that the Court should not read into the Constitution an international law limit where there is none. *See id.* at 8-9. As such, the Government argues that the MDLEA is not facially unconstitutional because the Felonies Clause is not bound by international law. *See id.*

Second, even if the Felonies Clause was limited by international law, the Government argues that the plain text of § 70502(d)(1)(C) reflects Congress's clear intent to assert jurisdiction over vessels when the purported nation of registry does not corroborate the claim. *See id.* at 6. "'[I]f a statute makes plain Congress's intent,' a court 'must enforce the intent of Congress irrespective of whether the statute conforms to customary international law.'" *United States v. Ballestas*, 795 F.3d 138, 144 (D.C. Cir. 2015) (quoting *United States v. Yousef*, 327 F.3d 56, 93 (2d Cir. 2003)). "After all, 'Congress is not bound by international law,' so 'it may legislate with respect to conduct outside the United States, in excess of the limits posed by international law.'" *Id.* at 144 (quoting *Yousef*, 327 F.3d at 86). While international law is relevant for purposes of statutory construction and courts should employ the "Charming Betsy" canon of construction to avoid finding conflicts with international law, *see Murray v. Schooner Charming Betsy*, 6 U.S. 64 (1804) ("[A]n act of congress ought never to be construed to violate the law of nations if any other possible construction remains."), if there is clear Congressional intent to act contrary to international law, such Congressional intent must be given effect. *See United States v. Yunis*, 924 F.2d 1086, 1091 (D.C. Cir. 1991). As such, the Government submits that to the extent that a plain

reading of the MDLEA indicates Congressional intent to confer jurisdiction over vessels whose nationality cannot be confirmed or denied, in contravention of international law, the Court must give the MDLEA that effect. *See* ECF No. [63] at 6, 9.

Third, the Government argues that *Davila-Reyes* was wrongly decided because it misapplies international law. *See* ECF No. [63] at 13-14. The MDLEA states that "[a] claim of failure to comply with international law in the enforcement of [the MDLEA] may be made only by a foreign nation. A failure to comply with international law . . . is not a defense to a proceeding under this chapter." 46 U.S.C. § 70505. Therefore, the Government argues that defendants cannot rely on alleged violations of international law as a defense under the MDLEA. *See* ECF No. [63] at 13-14. Moreover, the Government stresses that the Eleventh Circuit has held that the MDLEA's jurisdictional provisions are intended to "allocate power between the courts and the executive as to which of the two will be responsible for complying with U.S. obligations under the international law of criminal jurisdiction." *Id.* at 14 (quoting *Hernandez*, 864 F.3d at 1303-04). As such, to the extent that there are any questions about the status of a defendant's vessel under international law, the challenge should be brought by a sovereign nation and "dealt with diplomatically and not by the courts." *Hernandez*, 864 F.3d at 1304.

The Court agrees with the Government. While Defendants argue that the Eleventh Circuit in *Hernandez*, 864 F.3d at 1303, addressed a statutory challenge under the MDLEA rather than a constitutional challenge of the MDLEA, the Eleventh Circuit expressly upheld the constitutionality of the MDLEA with respect to the Felonies Clause in rejecting the defendants' statutory challenge. The Eleventh Circuit stated that "the MDLEA was a constitutional exercise of Congressional authority under the Felonies Clause." 864 F.3d at 1303 (citing *Campbell*, 743 F.3d at 809-10). Further, although Defendants argue that *Campbell* dealt with other constitutional challenges and

not the specific argument that the Felonies Clause is textually limited by international law, the Eleventh Circuit rejected the defendant's constitutional challenges and the defendant's overarching argument that "Congress lacked the power under the Felonies Clause to define [the defendant's] conduct as a criminal offense." 743 F.3d at 806. In holding that Congress did have the power under the Felonies Clause to enact the MDLEA's jurisdictional provisions and criminalize the defendant's conduct, which is identical to Defendants' conduct here, the Eleventh Circuit effectively foreclosed Defendants' argument that Congress did not have the power under the Felonies Clause to enact the MDLEA's jurisdictional provisions. Thus, a plain reading of the Eleventh Circuit's holdings in both cases indicates that the Eleventh Circuit has twice upheld the constitutionality of the MDLEA under the Felonies Clause.

The Court is not persuaded by Defendants' argument that the Court is not bound by the prior Eleventh Circuit decisions because the Eleventh Circuit did not expressly consider whether the MDLEA violates the Felonies Clause in light of customary international law. Although "[q]uestions which merely lurk in the record . . . are not to be considered as having been so decided as to constitute precedents," *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004), in the instant case, Defendants' argument did not merely "lurk" in the record of the two Eleventh Circuit cases. Rather, the Eleventh Circuit considered jurisdictional arguments related to the prosecution of identical criminal conduct in identical factual circumstances pursuant to the identical provision of the MDLEA as the instant case. *See Campbell*, 743 F.3d 802; *Hernandez*, 864 F.3d 1292. As noted above, *Campbell* further considered related constitutional challenges based on the Felonies Clause, and both *Campbell* and *Hernandez* expressly upheld the constitutionality of the MDLEA with respect to the Felonies Clause. To the extent that Defendants raise a specific argument that the MDLEA violates the Felonies Clause because of customary

international law, the Eleventh Circuit instructs courts that "overlooked reason[s] or argument[s]" do not create an excuse to overlook the binding authority of precedent. *In re Lambrix*, 776 F.3d 789, 794 (11th Cir. 2015). Therefore, the Court declines Defendants' invitation to overlook binding precedent establishing the constitutionality of the MDLEA and to instead rely on Defendants' presumption that the Eleventh Circuit did not fully consider an additional argument that purportedly renders the MDLEA unconstitutional.

Lastly, assuming for the sake of argument that the Felonies Clause is bound by international law, the Eleventh Circuit has repeatedly permitted the United States to assert jurisdiction over foreign nationals trafficking drugs on the high seas by referencing the United States' rights under the protective principle of international law. *See, e.g.*, *Tinoco*, 304 F.3d at 1108; *Persaud*, 605 F. App'x at 795. Therefore, even if the Felonies Clause is bound by international law, Eleventh Circuit precedent establishes that the MDLEA does not contravene international law and is instead appropriately based on the protective principle of international law. In other words, Eleventh Circuit precedent establishes that Congress did not overstep its authority in enacting the MDLEA under the Felonies Clause by violating international law because the protective principle of international law permits MDLEA's conferral of jurisdiction over vessels whose nationality cannot be confirmed.[3]

---

[3] Defendants argue that Eleventh Circuit cases on the protective principle only address whether Congress can rely on the protective principle to prohibit drug trafficking on stateless vessels absent a nexus to the United States. *See* ECF No. [64] at 8. Defendants argue that the cases do not address whether Congress exceeded its constitutional authority by allowing jurisdiction over vessels whose nationality cannot be confirmed because such vessels are not stateless vessels but rather foreign vessels. *See id.* The Court is not persuaded. Plainly, the Eleventh Circuit has held that "the United States could prosecute foreign nationals on foreign vessels under the 'protective principle' of international law." *United States v. Gonzalez*, 776 F.2d 931, 938 (11th Cir. 1985). If the United States' jurisdictional reach under the protective principle extends to include foreign vessels, then logically the United States can prosecute foreign nationals on vessels purported to be of foreign nationality but whose nationality cannot be confirmed.

As such, Defendants' Motion is denied as to this matter, and the Court need not address the Government's argument that *Davila-Reyes* was wrongly decided.

### b. Offenses Occurring on the High Seas

Defendants raise for the first time in their Reply that the offenses did not occur on the "high Seas." ECF No. [64] at 9. Defendants further claim that the Government misapplies *United States v. McPhee*, 336 F.3d 1269 (11 Cir. 2003), and that the Government ignores 33 C.F.R. § 2.32(d) in responding to Defendants' purported arguments concerning the "high Seas." *See* ECF No. [64] at 9. However, a review of the pleadings indicates that Defendants never raised an argument regarding the high Seas in the Motion, and the Government did not cite *McPhee*, 336 F.3d 1269, and 33 C.F.R. § 2.32(d) in its Response.

Defendants' argument appears to be from a different case involving different factual circumstances in which the defendants were arrested within an exclusive economic zone ("EEZ"). *See United States v. Mijail-Arrecooce et al.*, No. 21-cr-20438-BB (S.D. Fla. Mar. 31, 2021), ECF No. [39] at 4. As such, Defendants' new argument is irrelevant to the instant case. To the extent that it must, the Court also notes that it is improper to raise an argument for the first time in a reply, and thus the Court need not consider such arguments further. *See, e.g.*, *Herring v. Secretary, Dep't of Corrs.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (internal quotations omitted); *Willis v. DHL Global Customer Sols. (USA), Inc.*, No. 10-62464-CIV, 2011 WL 4737909, at *3 (S.D. Fla. Oct. 07, 2011) (collecting cases stating that it is inappropriate to raise new arguments in a reply brief and stating that courts in this district generally do not consider these arguments).

CASE NO. 22-cr-20019-BLOOM

**IV.     CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [62]**, is

**DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 9, 2022.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record