STATEMENT OF OFFICER WILLIAM MCGUIRE REGARDING THE BOARDING OF (UNKNOWN) GO-FAST VESSEL (TWON)ON 06DEC2021

While on routine patrol in the Caribbean Sea onboard the His Netherlands Majesty's Ship (HNLMS) HOLLAND with U.S. Coast Guard Law Enforcement Detachment 109, at approximately 10:46am local time a Maritime Patrol Aircraft (MPA) reported a Go-Fast vessel (GFV) suspect of illicit maritime activity. We were tasked with conducting a right of visit (ROV) boarding. A statement of no objection (SNO) was granted at approximately 1:35pm local time and the HOLLAND first launched their embarked helicopter to gain visual of the target of interest (TOI). The HOLLAND then launched two Fast Raiding Interception and Special Forces Craft (FRISC) to pursue. FRISC 01 consisted of the driver, the navigator, myself as the Boarding Officer (BO), Officer Canty as Assistant Boarding Officer (ABO), Officer Terrones as Boarding Team Member (BTM1), and 3 Dutch Marines trained for Surface Use-of-Force (SUF). FRISC 2 consisted of the driver, the navigator, and Officer Tyson as Boarding Team Member (BTM2).

The helicopter vectored the FRISCs to the TOI position, as FRISC 1 approached the Target of Interest (TOI) with blue strobe light activated they were at position 15-04.09N / 071-24.46W at 2:53pm local time. I observed three persons on board located behind the center console. The vessel was dead in the water with one of the persons working on an engine. The vessel was approximately 25 feet in length, hull was blue in color with a blue tarp fastened across the bow of the vessel with two 75 horsepower Yamaha gasoline engines. The vessel was not flying a flag and did not have any registration numbers or indicia of nationality on the vessel. There were multiple visible green packages consistent with contraband and multiple blue fuel cans on board. The three persons were compliant. Once Officer Canty and Terrones boarded their vessel and conducted an initial safety inspection they determined the vessel was taking on water and unsafe and losing stability. We then transferred the three persons to FRISC 2 for

Page 1 of 2

STATEMENT OF OFFICER WILLIAM MCGUIRE REGARDING THE BOARDING OF (UNKNOWN) GO-FAST VESSEL (TWON)ON 06DEC2021

everyone's safety. Once onboard FRISC 2 Mr. Carlos Daniel Canrillo identified himself as the person in charge of the vessel. He stated he did not have any identification and at first did not know his date of birth. He claimed the vessel was registered in Dominican Republic but was unable to produce any registration. Mr. Carlos Daniel Canrillo stated that last port of call was today from Dominican Republic and next port of call was also today for Dominican Republic. The stated purpose of voyage was fishing for lobster but when asked where the fishing gear was he stated it was lost at sea. The 19 suspected contraband packages were then transferred from the TOI to FRISC 1. Officer Canty and Officer Tyson conducted the Narcotic Identification Kit (NIK) test resulting in two presumptive positive tests for cocaine. At approximately 5:43pm local time we were authorized to seize the vessel and evidence and treat the 03 persons as detainee's along with boarding complete. The vessel continued to take on water and sank due to the rough sea state.

This statement is true to the best of my knowledge.

*[signature]*

United States Coast Guard

Officer William J. McGuire

Statement of Officer Denzel Canty regarding the boarding of Unknown Go-Fast Vessel (TWON) on 06DEC2021

While on routine patrol in the Caribbean Sea on board the HNLMS HOLLAND with U.S. Coast Guard Law Enforcement Detachment 109, a Maritime Patrol Aircraft (MPA) reported a Go-Fast Vessel (GFV) suspected of illicit maritime activity. We were tasked with conducting a Right of Visit boarding (ROV) and the HOLLAND first launched their embarked helicopter to gain visual of the Target of Interest (TOI). The HOLLAND then sent two Fast Raiding Interception Special Forces Craft (FRISC) to pursue. The FRISC 1 consisted of the driver, navigator, Officer McGuire as the Boarding Officer, myself as the Assistant Boarding Officer (ABO), Officer Terrones and the Boarding Team Member (BTM) and three Dutch Marines trained in Surface Use of Force (SUF). FRISC 2 consisted of the driver and Officer Tyson.

Once on board the FRISC, the BO informed the boarding team that a Statement of No Objection (SNO) for a Right of Visit (ROV) boarding, Surface Use of Force (SUF) and Airborne Use of Force (AUF) had been issued. Once alongside the GFV, I embarked the GFV and gained positive control of the vessel by ordering all persons onboard to move to the front of the vessel. I continued to maintain security over all persons on board. While doing so, permission was granted to move the persons to FRISC 2 due to stability concerns. After that I noticed multiple packages near the front of the vessel wrapped in a consistent manner with current drug smuggling trends. Once permission for a Law Enforcement boarding was granted I assisted Officer Tyson with At Sea Space Accountability (ASSA). While doing so, I moved a tarp and noticed approximately 20 packages in the front of the vessel. I completed ASSA. After that, we moved all contraband and embarked FRISC 1. Myself and Officer Tyson conducted a Narcotics Identification Kit (NIK) test of the suspected contraband. We used the test type "G" to test for

Statement of Officer Denzel Canty regarding the boarding of Unknown Go-Fast Vessel (TWON)
on 06DEC2021

the presence of cocaine. Two tests yielded positive results for presumptive cocaine. After that FRISC 1 returned to the HOLLAND.

This statement is true to the best of my knowledge.

*[signature]*

United States Coast Guard

Officer Denzel J. Canty

Page 2 of 2

Statement of Officer Misael Terrones regarding the boarding of Unknown Go-Fast Vessel (TWON) on 06DEC2021

While on routine patrol in the Caribbean Sea on board the HNLMS HOLLAND with U.S. Coast Guard Law Enforcement Detachment 109, a Maritime Patrol Aircraft (MPA) reported a Go-Fast Vessel (GFV) suspected of illicit maritime activity. We were tasked with conducting a Right of Visit boarding (ROV). The HOLLAND first launched their embarked helicopter to gain visual of the Target of Interest (TOI). the HOLLAND then sent two Fast Raiding Interception Special Forces Crafts (FRISC) vessels to pursue. FRISC 1 consisted of the driver, navigator, Officer McGuire as the Boarding Officer, Officer Canty as the Assistant Boarding Officer (ABO), myself as the Boarding Team Member (BTM) and three Dutch Marines trained in Surface Use of Force (SUF). FRISC II consisted of the driver and Officer Tyson.

Once on board the FRISC, the BO informed the boarding team that a Statement of No Objection (SNO) for a Right of Visit (ROV) boarding, Surface Use of Force (SUF) and Airborne Use of Force (AUF) had been issued. Once alongside the GFV, I embarked the GFV and conducted a frisk search on the Personnel on Board (POB). While I conducted the Initial Safety Sweep (ISS) I found multiple packages consistent with current drug smuggling trends. I continued to maintain security over all persons on board. While doing so, permission was granted to move the persons to FRISC 2 due to stability concerns. I transferred with them on to FRISC 2 and held security over them until boarding was complete and we received permission to return to the HOLLAND.

This statement is true to the best of my knowledge.

United States Coast Guard

*[signature]*

Officer Misael Terrones

## STATEMENT OF OFFICER DANIEL TYSON REGARDING THE BOARDING OF UNKNOWN GO-FAST VESSEL (TWON) ON 06DEC2021

While on routine patrol in the Caribbean Sea on board the HNLMS HOLLAND with U.S. Coast Guard Law Enforcement Detachment 109, a Maritime Patrol Aircraft (MPA) reported a Go Fast Vessel (GFV) suspected of illicit maritime activity. We were tasked with conducting a Right of Visit (ROV) boarding. The HOLLAND first launched their embarked helicopter to gain visual of the Target of Interest (TOI). The HOLLAND then sent two Fast Raiding Interception Special Forces Craft (FRISC) vessels to pursue. FRISC 1 consisted of the driver, navigator, Officer McGuire as the Boarding Officer (BO), Officer Canty as Assistant Boarding Officer (ABO), Officer Terrones as the BTM, and three Dutch Marines trained in Surface Use-of-Force (SUF). FRISC 2 consisted of the driver, navigator, and myself.

The helicopter vectored the FRISCs into the TOIs position. FRISC 1 took positive control of the TOI, as I held cover on FRISC 2. I saw a blue, 24ft go-fast vessel with a blue tarp over the front half, three Persons on Board (POB), and multiple packages consistent with contraband trafficking. The sea-state was between six and twelve feet. Due to the sea-state, the BO asked permission to transfer the individuals onboard to FRISC 2 for officer safety. The request was granted, and FRISC 2 came alongside FRISC 1 to transfer the BTM onto FRISC 2 to interpret. I helped get all POB onto FRISC 2 before joining the ABO on the TOI.

Once onboard, we stood by for permission to start a full Law Enforcement boarding. We then transferred the packages onto FRISC 1 due to the stability of the TOI becoming more of an issue as time progressed. Once we were granted permission, the

Page 1 of 2

## STATEMENT OF OFFICER DANIEL TYSON REGARDING THE BOARDING OF UNKNOWN GO-FAST VESSEL (TWON) ON 06DEC2021

ABO and I took photos throughout the inside of the TOI. We then moved into At Sea Space Accountability (ASSA). ASSA is the systematic measuring of the vessel, determining if there are any unaccounted-for space onboard. After ASSA, I took IONSCAN swabs, which is a trace detection system used to find narcotics and explosives. Lastly, we gathered all non-drug evidence and requested to disembark. The ABO and I traversed onto FRISC 1. Once on the FRISC, the ABO and I conducted Narcotics Identification Kit (NIK) test "G", which tests for cocaine. The BO photographed the whole process of testing. We obtained two presumptive positive results for cocaine. The BO then asked to treat the individuals from the TOI as detainees. Once this permission was granted, the BO joined the detainees on FRISC 2, while the ABO and I returned to the HOLLAND with the contraband.

This statement is true to the best of my knowledge.

Tactical Law Enforcement Team Pacific

*[signature]*

Daniel P. Tyson, U.S.C.G.